UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARY SHEA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 24-cv-10402-ADB |
| | * | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, UNUM GROUP, MASS GENERAL BRIGHAM, INC. AND THE MASSACHUSETTS GENERAL HOSPITAL LONG TERM DISABILITY WRAP PLAN, | * * * * * | |
| Defendants. | | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Mary Shea ("Ms. Shea" or "Plaintiff") brought this action against the Defendants, Unum Life Insurance Company of America and Unum Group (collectively "Unum"), Mass General Brigham, Inc. ("MGB"), and the Massachusetts General Hospital Long Term Disability Wrap Plan ("Plan") (collectively referred to as "Defendants") for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA"). Currently before the Court is Unum's motion to dismiss. See [ECF No. 17]. For the reasons articulated herein, Unum's motion to dismiss is **GRANTED**.

I.   **BACKGROUND**

The following facts are taken from the Complaint, [ECF No. 1 ("Complaint" or "Compl.")], the factual allegations of which are assumed to be true when considering a motion to

dismiss.  See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

      A.      **Factual Background**

            **1.  Judicial Notice**

As a preliminary matter, in support of its motion to dismiss, Unum attaches two exhibits relevant to the Court's analysis, which it contends can be judicially noticed "because the [C]omplaint incorporates them by reference . . . or relies heavily on their terms and effect." [ECF No. 18 at 3 n.1].  The first is the Administrative Services Agreement (referred to by the parties as the "ASO") for the Plan.  [ECF No. 18-1 ¶ 4; ECF No. 18-2 (ASO)].  Plaintiff argues that the ASO is not incorporated by reference into the Complaint because Plaintiff did not receive it when she requested Plan documents from MGB and in fact did not receive a copy until after she filed the Complaint.  [ECF No. 22 ("Opposition" or "Opp'n") at 3].  That said, Plaintiff cites the ASO extensively in her opposition brief, see, e.g., [id. at 5–6], and she does not raise any other issues regarding the document's accuracy or reliability, see generally [id.].  Therefore, because Plaintiff does not challenge the ASO's authenticity and because the Complaint's allegations are specifically linked to its terms, the Court will consider the ASO in ruling on the motion to dismiss.  Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under

Rule 12(b)(6)."); see also Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass., 66 F.4th 307, 310–11 (1st Cir. 2023) (upholding district court's decision to rely on an administrative services agreement).

The second relevant exhibit Unum attaches to its motion is the "Long Term Disability Summary Plan Description," ("SPD"), which states it was "[r]evised January 1, 2021." [ECF No. 18-1 ¶ 5; ECF No. 18-3 at 2]. Plaintiff's Opposition attaches a different version of this document, "[r]evised January 1, 2023," which she received from MGB. [ECF No. 22-1 at 9]. Plaintiff neither contests the SPD's authenticity nor that it is linked to the Complaint's allegations. [Opp'n at 3]. She simply notes that she was given a different version and that Unum's version appears to be a draft. [Id.]. Unum does not provide any reason to question the authenticity of the version Plaintiff received from MGB, see generally [ECF No. 25 ("Reply")], and MGB is arguably the better situated party to provide an accurate SPD. Additionally, Unum relies on the SPD for four discrete propositions, all of which are identical in both versions.[1] Compare [ECF No. 18-3 at 2, 5], with [ECF No. 22-1 at 9, 12]. As such, the Court is satisfied that it can take judicial notice of the SPD version provided by Plaintiff in ruling on this motion to dismiss. See In re Bank of Am. Cal. Unemployment Benefits Litig., 674 F. Supp. 3d 884, 928 (S.D. Cal. 2023), on reconsideration on different grounds, No. 21-md-02992, 2024 WL 3174380 (S.D. Cal. June 25, 2024) (judicially noticing plaintiff's competing version of a document when

---

[1] These are: 1) the Plan is self-insured, 2) MGB is the "Plan Administrator," 3) Unum is the "Claims Administrator," and 4) "Claims Administrator" is defined in the SPD as "the person or persons . . . designated from time to time by [MGB] to provide claims processing services with respect to the plan in accordance with an agreement entered into between [MGB] and said person or persons." [ECF No. 18 at 3].

it included "nearly identical" provisions, document was available on defendant's website, and defendant had not provided reason to question the authenticity of that version).

### 2. Plaintiff's Denial of Benefits

Plaintiff is a vested participant in the Plan, which is self-insured by MGB. [Compl. ¶ 9]; see also [ECF No. 22-1 at 9]. As noted above, Unum is the Claims Administrator of the Plan, and MGB is the Plan Administrator. [ECF No. 22-1 at 9]. As "Claims Administrator," Unum "provide[s] claims processing services with respect to the [P]lan in accordance with" the ASO. [ECF No. 22-1 at 12].

Plaintiff was employed by Massachusetts General Hospital ("MGH") from 1978 until she ceased working on December 21, 2021 as a result of neurogenic bladder syndrome. [Compl. ¶¶ 28, 30]. She was subsequently diagnosed with lung cancer. [Id. ¶ 31]. On August 22, 2022, Unum denied Plaintiff's claim for long term disability benefits. [Id. ¶ 32]. On or about October 24, 2022, Plaintiff appealed this denial, and Unum upheld the denial on March 13, 2023, based in part on medical records reviews by Drs. Neal Greenstein and Peter Brown. [Id. ¶¶ 33–34]. On September 8, 2023, Plaintiff, through counsel, appealed Unum's denial to MGB, [id. ¶ 37], and MGB upheld the denial on December 7, 2023, based on the same information in Unum's possession when it rendered its decision, [id. ¶ 41].

### 3. The ASO

The ASO includes several provisions relevant to this action. In particular, Sections 2 and 3 outline Unum's and MGB's (or "Customer," as it is referred to in the ASO) respective obligations. See [ECF No. 18-2 at 3–6]. The introduction to Section 2 establishes that Unum provides "the following **nondiscretionary, non-fiduciary administrative services** relative to the receipt, management, record keeping, and processing of Claims under the Plan." [Id. at 3

4

(emphasis added)]. Section 2.1 specifically details the process by which Unum will undertake to administer claims, stating that:

> Upon our receipt of a Claim, Unum shall promptly process the Claim **consistent with Customer's general or specific direction and Customer's interpretation of the Plan** and consistent with Unum's claims procedures. We will advise Customer when a Claim is payable in accordance with Customer's Plan. **Unless and until Customer exercises its right to object to these recommendations Customer will pay Claims in accordance with Unum's recommendations.** Claims shall be paid solely from Customer or Plan funds either directly by Customer or by a funding method as agreed by the Parties. Unless otherwise agreed by the Parties, Unum shall generate and deliver to Claimant all correspondence relative to Claims payments. **Unum shall have no authority to deny Claims but shall advise Customer when it recommends that a Claim be denied**.

[Id. (emphases added)].

The ASO also details Unum's role with respect to any appeal. Section 2.4 specifies that "Unum shall timely notify Customer of any initial request for review (appeal) of an adverse Claim determination and, after reviewing all pertinent information relating to the claim, provide a recommendation to Customer." [ECF No. 18-2 at 4]. It further details the steps Unum should take "[i]f Customer decides to pay the Claim" or "[i]f, alternatively, Customer denies the appeal." [Id.].

Section 3 outlines MGB's obligations, and the introduction states that it "retains **full and exclusive discretionary power and authority in connection with the establishment, interpretation, modification and administration of the Plan**, and, if the Plan is governed by ERISA, **will serve as the named claims fiduciary**." [ECF No. 18-2 at 5 (emphases added)]. It further clarifies that "Customer has the exclusive final responsibility and the exclusive discretionary authority for all Claims decisions, and for providing full and fair review of all appeals." [Id.]. Section 3.6 also clarifies that MGB "is the Plan Administrator" and that "[a]s the Plan Administrator, Customer shall notify Unum in writing if Customer concludes that Unum

5

is not processing Claims **as Customer determines, in its exclusive discretion**, is appropriate." [Id. at 6 (emphasis added)]. Finally, Section 3.7 reiterates that after receiving Unum's recommendation as to a claim, MGB "shall diligently consider the recommendation and make a final benefit decision." [Id.].

### B. Procedural History

Plaintiff filed the Complaint in this action on February 20, 2024. [Compl.]. On June 14, 2024, Unum moved to dismiss, [ECF No. 17], Plaintiff opposed on June 28, 2024, [Opp'n], and Unum filed a reply brief on July 12, 2024, [Reply].[2]

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze them in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Additionally, "a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice." MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief[,]'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024)

---

[2] A related action is also pending before this Court, Martin-McLellan v. Unum Life Ins. Co. of Am., No. 24-cv-10402.

(quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)).  Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

III.     **DISCUSSION**

"ERISA contemplates actions against an employee benefit plan and the plan's fiduciaries.  With narrow exception, however, ERISA does not authorize actions against nonfiduciaries of an ERISA plan."  Terry v. Bayer Corp., 145 F.3d 28, 35 (1st Cir. 1998) (quoting Santana v. Deluxe Corp., 920 F. Supp. 249, 253 (D. Mass. 1996)).  A person (which includes various business entities, see 29 U.S.C. § 1002(9)) can be a fiduciary under ERISA in two ways.  Mass. Laborers' Health, 66 F.4th at 316.  "First, a person is a 'named fiduciary' if identified as such in a plan instrument or pursuant to a procedure specified in the plan."  Id. (citing 29 U.S.C. § 1102(a)).  Here, Plaintiff does not argue that Unum was a named fiduciary.  See generally [Compl.].[3]

"Second, a person can become a 'functional fiduciary' by 'performing at least one of several enumerated functions with respect to a plan.'"  Mass. Laborers' Health, 66 F.4th at 316 (citing Beddall, 137 F.3d at 18 and 29 U.S.C. § 1002(21)(A)).  As relevant here, a person is a functional fiduciary with respect to a plan to the extent that person "exercises any discretionary

---

[3] Separately, the ASO also does not support the proposition that Unum is a named fiduciary. See, e.g., [ECF No. 18-2 at 5 (stating, "if the Plan is governed by ERISA, [MGB] will serve as the named claims fiduciary")].

7

authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); see also [Opp'n at 7]. Whether a party is a functional fiduciary may be determined by both reviewing the plan documents and "taking account of actual practices under that plan." Shields v. United of Omaha Life Ins. Co., 50 F.4th 236, 248 (1st Cir. 2022)

In her Opposition, Plaintiff repeatedly concedes that the plain language of the ASO and the SPD "support Unum's claims [that it did not exercise discretion] and contradict the allegations in the Complaint." [Opp'n at 8]; see also [id. at 6 ("[U]nder the terms of the ASO and SPD, Unum's responsibilities were to review Ms. Shea's claim and first appeal consistent with the terms of the SPD, ERISA, and its claims procedures and to make recommendations to MGB, which MGB could then either approve or deny following an independent investigation."); id. at 9 n.2 (discussing W.E. Aubuchon Co., Inc. v. BeneFirst, LLC, 661 F. Supp. 2d 37, 53 (D. Mass. 2009), which held the defendant was not a functional fiduciary "because a different entity had 'final authority and responsibility' for the plan," and conceding that "[t]his is how the ASO reads in this case")]. The same is true in the Complaint, which concedes that "[t]he Plan does not confer discretion on Unum . . . to determine eligibility for benefits or to interpret the terms of the Plan," [Compl. ¶ 21], and that "[a]ny discretion that may be contained in the Plan was not delegated to Unum," [id. ¶ 22]. Moreover, the plain language of the SPD makes clear that Unum's agreement with MGB was to provide "claims processing services" pursuant to the ASO, [ECF No. 22-1 at 12], which itself expressly states that MGB retained the final authority to authorize a benefit payment under the Plan, [ECF No. 18-2 at 6]. All of this cuts against a finding that Unum exercised discretion in administering or managing the Plan or any similar fiduciary obligations. Cf. Shields, 50 F.4th 236, 252 (1st Cir. 2022) (finding defendant had

fiduciary duty where "the Plan provide[d] that [Defendant] ha[d] the discretion and the final authority to construe and interpret the Plan, including to decide all questions of eligibility and all questions regarding the amount and payment of any [Plan] benefits within the terms of the [Plan] as interpreted by [Defendant].") (fourth and fifth alternations in original) (internal quotations omitted).

Recognizing that the plan documents do not establish that Unum is a functional fiduciary, Plaintiff instead argues that she has "sufficiently alleged that Unum's 'actual practices' reveal that it was exercising a fiduciary function with respect to her claim." [Opp'n at 7–8]. The Court disagrees. Interpreting the Complaint generously and in the light most favorable to Plaintiff, Hutcheson, 647 F.3d at 383, Plaintiff alleges that it was Unum and not MGH that denied Plaintiff's claim, [Compl. ¶¶ 34, 41], upheld that denial, [id. ¶ 34], and conducted some medical analyses to reach those decisions, [id. ¶¶ 34–35]. These steps are all contemplated by the ASO, which makes clear that Unum undertakes these administration and management functions consistent with MGB's "general or specific direction and [] interpretation of the Plan." [ECF No. 18-2 at 3]. These actions, without more to evidence Unum exercising discretion in actual practice, amount to merely "nondiscretionary administrative functions," which are insufficient to confer fiduciary status. Mass. Laborers' Health, 66 F.4th at 318 (noting "nondiscretionary administrative functions include, inter alia, the '[a]pplication of rules determining eligibility for participation or benefits,' the '[c]alculation of benefits,' and the '[p]rocessing of claims'" (alterations in original) (quoting 29 C.F.R. § 2509.75-8(D-2))).

Perhaps recognizing that the Complaint falls short on alleging Unum's actual practices, Plaintiff argues for the first time in her Opposition that "Unum . . . did not follow the process outlined in" the relevant Plan documents and "[i]nstead, Unum made each decision on Ms.

9

Shea's claim prior to the voluntary appeal without MGB's input." [Opp'n at 6]. To support this new allegation, Plaintiff attaches an email from MGB's counsel to Plaintiff's counsel dated June 6, 2024, [ECF No. 22-2], in which MGB's counsel states that she "understand[s] [Plaintiff's counsel] to have asked if MGB considered the merits of Ms. Shea's claim (or had to sign off on Unum's denial) before Ms. Shea appealed to the plan," [id. at 2]. Counsel further reports that she "located no documents to that effect" and that she understands that "Unum denied the claim without MGH weighing in." [Id.]. Finally, MGB counsel says that "[o]nce Ms. Shea appealed the plan, there was an independent review, and Unum did not participate in that review." [Id.]. The Court, however, may not address whether these allegations are sufficient to confer functional fiduciary status on Unum because an opposition to a motion to dismiss is not the place for new factual allegations. Klein v. MHM Corr. Servs., Inc., No. 08-cv-11814, 2010 WL 3245291, at *2 (D. Mass. Aug. 16, 2010) ("For the purposes of deciding whether a plaintiff's factual allegations are sufficient in the context of a motion to dismiss under Rule 12(b)(6), the [C]ourt may not look beyond the complaint to facts alleged solely in a plaintiff's moving papers."); Decoulos v. Town of Aquinnah, No. 17-cv-11532, 2018 WL 3553351, at *12 (D. Mass. July 24, 2018) ("[Plaintiff] cannot bolster the allegations of the Amended Complaint through the late addition of new facts in opposing a motion to dismiss."); Gordo-Gonzales v. United States, No. 15-cv-01602, 2016 WL 10672229, at *2 (D.P.R. July 22, 2016) ("Using motion pleading to include new facts and law is an improper way to supplement or amend a Complaint.").[4]

---

[4] Although not considering these allegations in the resolution of the instant motion, the Court nonetheless observes that it is unclear how these allegations demonstrate that Unum's "actual practices" deviated from those outlined in the ASO. See [Opp'n at 8]. The ASO provides that

IV.     CONCLUSION

For the reasons articulated above, Unum's motion to dismiss is **GRANTED** without prejudice.

**SO ORDERED.**

October 28, 2024                                        */s/ Allison D. Burroughs*
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE

---

"[u]pon [Unum's] receipt of a Claim, Unum shall promptly process the Claim consistent with [MGB's] general or specific direction and [MGB's] interpretation of the Plan and consistent with Unum's claims procedures," and that "[u]nless and until [MGB] exercises its right to object to these recommendations [MGB] will pay Claims in accordance with Unum's recommendations." [ECF No. 18-2 at 3].  Unless and until MGB objected to Unum's recommendations, therefore, MGB was not required to be involved in the claims administration process.  Moreover, the email from MGB's counsel makes clear that once Plaintiff appealed, MGB did engage with the claim pursuant to the terms of the ASO, which requires MGB to "diligently consider [an appeal] and make a final benefit decision."  [Id. at 6]; see [ECF No. 22-2].